## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____

MICHAEL CASSAMAS, MICHAEL FORBES, and
JOHN MACMASTER, on behalf of themselves and
other similarly situated persons,

      Plaintiffs,

      v.

HALLKEEN MANAGEMENT, INC.; HALLKEEN
ASSISTED LIVING COMMUNITIES LLC; PROSPECT
HOUSE GROUP LLC; HALLKEEN ASSISTED LIVING
LLC; and PROSPECT HOUSE ASSOCIATES LIMITED
PARTNERSHIP,

      Defendants.
_____

Civil Action No. _____

**CLASS ACTION COMPLAINT**
(Jury Trial Demanded)

### INTRODUCTION

1. The Plaintiffs are low-income elderly residents of Prospect House, an assisted living residence owned, operated, and/or managed by HallKeen Management, Inc., and one or more of the other Defendants in this matter (collectively "HallKeen"). The Plaintiffs seek to represent themselves and other similarly situated residents of Prospect House as set forth below.

2. HallKeen accepts and has accepted substantial government benefits in connection with Prospect House, including tax credits from the Low Income Housing Tax Credit ("LIHTC") Program and Medicaid and Medicare funding under the Program of All-Inclusive Care for the Elderly ("PACE"). As a matter of contract, statute, and regulation, HallKeen is prohibited from requiring Prospect House's low-income residents to pay fees other than rent.

3.  HallKeen nevertheless requires each Plaintiff and Class Member, as a matter of policy and practice, to pay a substantial, variable, non-itemized, additional fee for unspecified services, which it labels an "ancillary charge" in its resident ledgers. This charge is referred to herein as the "Ancillary Fee."

4.  The Ancillary Fee is not just prohibited by the government benefit programs that facilitate HallKeen's business, it is unjustified by any services that HallKeen routinely provides, it improperly varies between residents despite providing the same services to all residents, and, by its design, it leaves the Plaintiffs and the Class Members impoverished and without the means to pay for personal needs.

5.  Since at least January 2023, HallKeen has calculated this Ancillary Fee to exact *all of the residents' remaining income after their rent payments*, minus a personal allowance of $100 or less. Residents are struggling to meet their personal needs with this meager allowance.

6.  HallKeen also owns, manages, and/or operates other LIHTC-funded developments across the Commonwealth that are not assisted living residences. HallKeen does not impose the Ancillary Fee at these developments. By imposing the Ancillary Fee on its residents at Prospect House, which primarily serves elderly residents with disabilities, HallKeen discriminates against the Plaintiffs and the Class based on age and disability.

7.  By these and other discriminatory and illegal acts described below, HallKeen has violated the Plaintiffs' rights, and those of similarly situated individuals, under the Fair Housing Act, 42 U.S.C. § 3604 et seq.; Massachusetts General Laws c. 151B § 6; Massachusetts General Laws c. 93A §§ 2, 9; various regulations; and HallKeen's contracts setting forth the consideration for the generous state and federal benefits it receives.

8. The Plaintiffs seek monetary, declaratory, and injunctive relief for themselves and the Class they seek to represent.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over the Plaintiffs' federal and state law claims pursuant to 28 U.S.C. §§ 1331, 1343, and 1367, and 42 U.S.C. § 3613.

10. The Plaintiffs are entitled to declaratory relief, as well as other relief deemed necessary and proper, pursuant to 28 U.S.C. §§ 2201 and 2202.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because the Plaintiffs and Defendants are residents of this District and the events or omissions giving rise to the claims herein occurred in this District.

## PARTIES

**Plaintiffs**

12. Plaintiff Michael Cassamas is a 73-year-old man with disabilities. He has resided at Prospect House since July 2018. Since at least November 2018, HallKeen has imposed the Ancillary Fee on Mr. Cassamas in addition to his rent. His current Ancillary Fee leaves him just $100 each month in disposable income.

13. Plaintiff Michael Forbes is a 72-year-old man with disabilities. Along with his wife, Victoria Forbes, he has resided at Prospect House since 2021. Since they moved to Prospect House, HallKeen has charged Mr. and Mrs. Forbes the Ancillary Fee in addition to their rent. Their current Ancillary Fee leaves them with approximately $100 each month.

14. Plaintiff John MacMaster is a 75-year-old man with disabilities. Mr. MacMaster has resided at Prospect House since February 2021. Since he moved in, HallKeen has

imposed the Ancillary Fee on Mr. MacMaster in addition to his rent. His current

Ancillary Fee leaves him with $100 each month in disposable income.

**Defendants**

15. Defendants HallKeen Assisted Living Communities LLC; HallKeen Assisted Living
LLC; HallKeen Management, Inc.; Prospect House Associates Limited Partnership; and
Prospect House Group LLC (collectively, "HallKeen"), are a group of business entities
under common management and control that own, operate, and/or manage dozens of
multi-family residential properties and assisted living communities, including Prospect
House. HallKeen, among other things, sets, implements and oversees all policies and
procedures relevant to this complaint, including, but not limited to, collecting the
Ancillary Fee described herein.

16. Prospect House Associates Limited Partnership was formed in Massachusetts and has its
principal place of business in Norwood, Massachusetts. It is the business entity that
manages residential leasing at Prospect House and that has entered into residential leases
and assisted living services agreements with the Plaintiffs. Prospect House Associates
Limited Partnership is the owner of Prospect House and subcontracts with a local PACE
to provide assisted living services to Prospect House residents (as discussed in greater
detail herein). Its General Partner is Prospect House Group LLC.

17. Prospect House Group LLC is organized in Massachusetts and has its principal place of
business in Norwood, Massachusetts. Its sole Manager is Andrew P. Burnes.

18. HallKeen Assisted Living Communities LLC is organized in Massachusetts and has its
principal place of business in Norwood, Massachusetts. Its sole Manager is Andrew P.
Burnes.

19. HallKeen Assisted Living LLC is organized in Massachusetts and has its principal place of business in Norwood, Massachusetts.  Its sole Manager is Andrew P. Burnes.

20. HallKeen Management, Inc., is incorporated in Massachusetts and has its principal place of business in Norwood, Massachusetts.  Its President and Secretary is Andrew P. Burnes.  Its Treasurer is Denison M. Hall.  Its Board of Directors consists of Andrew P. Burnes, Denison M. Hall, and John L. Hall II.

21. All of the HallKeen entities described above are registered with the office of the Massachusetts Secretary of State at a single address (1400 Providence Highway, Bldg #1, Norwood, MA 02062) and share a single Resident Agent (Andrew P. Burnes).

## STATEMENT OF FACTS

22. Prospect House is an assisted living residence ("ALR") located at 420 Reservoir Avenue in Revere, Massachusetts.

23. Prospect House was financed with assistance from the LIHTC program and under the law and regulations governing the federal LIHTC program as discussed below.

24. Prospect House additionally receives federal funding through MassHealth to provide assisted living services to its residents. In accordance with state and federal regulations, these MassHealth payments must constitute payment in full for assisted living services.

### I.    Legal Obligations

#### a.   Obligations under the LIHTC Program

25. The United States Congress established the LIHTC program in 1986 to facilitate the construction and rehabilitation of affordable housing.

26. The LIHTC program is the largest source of federal assistance for developing affordable rental housing.

27. The Internal Revenue Service ("IRS") administers the LIHTC program.

28. Each year, the IRS allocates LIHTCs to state and local agencies, which in turn award substantial and valuable tax credits to affordable housing developers.  Developers use the LIHTCs to raise capital for the construction and rehabilitation of affordable rental housing projects.

29. Those projects must be composed entirely or partially of rental units reserved for low-income households, and rents and utilities for these low-income units are restricted under the program in exchange for the credits.

30. According to the HUD Office of Policy Development and Research, the LIHTC program allocates to state and local agencies "approximately $10 billion in annual budget authority to issue tax credits for the acquisition, rehabilitation, or new construction of rental housing targeted to lower-income households."

31. On December 30, 2002, Prospect House Associates Limited Partnership (and its successors and assigns) and the Massachusetts Development Finance Agency ("MassDevelopment") entered into an agreement that governs Prospect House's participation in the LIHTC Program ("the LIHTC Agreement").

32. A true and correct copy of the LIHTC Agreement is attached as Exhibit A.

33. As the LIHTC Agreement describes, HallKeen applied to MassDevelopment for Low-Income Tax Credits to finance Prospect House.  Exhibit A, p. 1-2.

34. MassDevelopment then financed the development based on HallKeen's representation that a percentage of the units in the development would be rent-restricted and occupied by low-income households, as defined by Section 42 of the Internal Revenue Code. Exhibit A, p. 1-2.

35. The LIHTC Agreement provides there are 77 such "low-income units" at Prospect House, which represent 70% of the units in the development.  Exhibit A, Section 1(a), 4(a).

36. The LIHTC Agreement defines "low-income units" as those set aside for tenants whose income upon admission "does not exceed 60% percent [sic] of the area median gross income," as computed in accordance with the LIHTC regulations.  Exhibit A, Section 1(a), 4(a). The "low-income units" are referred to herein as "LIHTC Restricted Units."

37. HallKeen is contractually required to limit the rents for the LIHTC Restricted Units, such that the gross rent does not exceed the income limitation set forth by the LIHTC program. *Id*. at 1(a).

38. HallKeen is also contractually required to comply with the statutory provisions and regulations and the IRS rules, rulings, policies, procedures, and official statements governing LIHTC-financed developments. *Id*. at 8(a), 8(b).

39. These legal obligations include the requirement that HallKeen refrain from charging mandatory fees in addition to rent.

40. Specifically, the IRS regulations state that "any charges to low-income tenants for services that are not optional generally must be included in gross rent."  26 C.F.R. § 1.42-11(a).

41. The IRS has explained:

"Units may be residential rental property notwithstanding the fact that services *other than housing* are provided. However, any charges to low-income tenants for services that are not optional generally must be included in gross rent. (Treas. Ref. §1.42-11). A service is optional when the service is not a condition of occupancy and there is a reasonable alternative. Charges for non-optional services such as a washer and/or dryer hookup fee and built-in/on storage sheds (paid month-to-month or a single payment) would always be included within gross rent [...] *Assuming they are optional*, charges such as pet fees, laundry room fees, garage, and storage fees may be charged in addition to the rent; i.e.,

they are not included in the rent computation. . . .  Under Treas. Reg. §1.42-11(a)(3), the cost of services that are *required as a condition of occupancy* must be included in gross rent even if federal or state law required that the services be offered to tenants by building owners."

Guide for Completing Form 8823, Low-Income Housing Credit Agencies Report of Noncompliance or Building Disposition, 11-2 (emphases added).

42. In short, LIHTC-financed developments may not impose on the low-income residents any mandatory charges separate from rent.

43. In return for its compliance with the LIHTC program requirements, HallKeen has been allocated significant tax credits. *See* Exhibit A, Section 8(f).

44. The LIHTC Agreement expressly provides low-income individuals with a right to enforce the contract's terms as third-party beneficiaries to the contract: HallKeen "in consideration for receiving Low-Income Housing Tax Credits for this Project hereby agrees and consents that…any individual who meets the income limitation applicable under Section 42 of the Code (whether a prospective, present, or former occupant) shall be entitled, for any breach of the provisions hereof, and in addition to all other remedies provided by law or in equity, to enforce specific performance by [HallKeen] of its obligations under this Agreement." *Id*.

45. Each of the Named Plaintiffs and members of the Class is by definition an "individual who meets the income limitation applicable under Section 42 of the Code (whether a prospective, present, or former occupant)," because HallKeen has leased LIHTC Restricted Units to each.

46. Each of the Named Plaintiffs and members of the Class therefore has a right to enforce the LIHTC Agreement.

### b.  Obligations under the Massachusetts Assisted Living Regulations

47. Because Prospect House is an ALR, all households residing in Prospect House include at least one person with disabilities who needs assisted living services to help with the activities of daily living.

48. ALRs must comply with the Massachusetts laws and regulations setting forth special protections for ALR residents to prevent abuse of elders and people with disabilities.

49. These protections include providing residents a right to "[r]eceive an itemized bill for fees, charges, expenses and other assessments for the provision of Resident services, Personal Care Services, and optional services." 651 C.M.R. § 12.08(1)(t).

50. The regulations further require all residency agreements to include "[a] *clear explanation* of the services included in any fees, a description and *itemization of all other bundled services* as well as an explanation of other services available at an additional charge." 651 C.M.R. § 12.08(2)(a) (emphases added).

### c.  Obligations as a Recipient of MassHealth Funds

51. HallKeen has also taken on certain contractual and legal obligations as a recipient of MassHealth funds.

52. MassHealth administers federal Medicaid and Medicare funds to the Program of All-inclusive Care for the Elderly ("PACE").

53. PACE's goal is to provide medical, social, and recreational services to elders to enable them to live independently outside of nursing homes.  MassHealth, What is PACE?, https://www.mass.gov/info-details/what-is-pace.

54. PACE participants occupy the vast majority, if not all, of the LIHTC Restricted Units at Prospect House.

55. The PACE participants residing at Prospect House are enrolled in a particular PACE,

called East Boston Neighborhood Health Center Program of All-Inclusive Care for the

Elderly (hereinafter, "EBNHC PACE").

56. EBNHC PACE's contract with the state Executive Office of Health and Human Services

("EOHHS") provides that EBNHC PACE may use the MassHealth funds that it receives

to purchase services from subcontracted providers.

57. Such subcontracts remain subject to the EOHHS contract and must comply with federal

PACE regulations as well as MassHealth provider regulations.

58. For the entire relevant time period of this Complaint, EBNHC PACE has subcontracted

with HallKeen to provide assisted living services to its Prospect House residents who

qualify for PACE.

59. EBNHC PACE and HallKeen periodically execute a "Service Addendum" to revise the

rates that PACE pays HallKeen for its services.

60. A true copy of the Parties' current Service Addendum ("2023 Service Addendum") is

attached as Exhibit B.

61. The 2023 Service Addendum provides that PACE pay HallKeen $2,950 per month per

PACE participant.

62. In return, HallKeen has agreed to provide assisted living services to the PACE

participants residing at Prospect House.

63. The 2023 Services Addendum provides a non-exhaustive list of services covered by

EBNHC PACE's "assisted living packages," including but not limited to: three full meals

per day; access to 24-hour staff; emergency response call system; daily trash pick-up;

housekeeping once per week; social or recreational activities once per day; assistance

with activities of daily living including dressing, bathing, grooming supervision, and

other tasks; self-administered medication management; reminders for meals and activities; bed and linen laundry service; access to scheduled transportation for shopping and other events; every-2-hour checks; personal laundry; accompaniment to the bathroom; and associated personal care and assistance with products.

64. The 2023 Service Addendum further provides that any changes to the service packages set forth in the Addendum will be payable by EBNHC PACE only if agreed to in writing by an authorized EBNHC PACE representative.

65. The 2023 Service Addendum expressly forbids HallKeen from providing any additional services without EBNHC PACE approval.

66. Further, HallKeen has agreed to accept PACE funds as "payment in full, and not bill participants" for the assisted living services, which includes any associated overhead, staffing, or administrative costs. *See* 42 C.F.R. § 460.70(d)(5)(ii).

67. Through the procedures set forth in the Service Addendum, EBNHC PACE ensures that all of the assisted living services provided to PACE participants are covered through its payments to HallKeen.

68. On information and belief, all of the relevant requirements of the 2023 Service Addendum have been in place, by contract and/or regulation, at all times relevant to the claims in this Complaint.

**II.    General Factual Allegations: Prospect House's Ancillary Fee Requirement**

69. The PACE participants residing in Prospect House's LIHTC Restricted Units (hereinafter, "Low-Income Residents") are unable to afford market-rate housing.

70. The Low-Income Residents are elders.

71. Each household of Low-Income Residents includes one or more persons with disabilities

necessitating assisted living services.

72. HallKeen imposes the Ancillary Fee in addition to the Low-Income Residents' LIHTC-restricted rent.

73. HallKeen imposes the Ancillary Fee on the residents of Prospect House, but not on the residents of its LIHTC-funded buildings that are not ALRs.

74. The Ancillary Fee is monthly and mandatory.

75. HallKeen does not offer its Low-Income Residents the choice to opt out of the Ancillary Fee. Nor does HallKeen permit its Low-Income Residents to opt out of the Ancillary Fee if they request to do so.

76. The Ancillary Fee is not a fixed amount, nor is it a uniform amount imposed on all the residents.

77. HallKeen calculates the Ancillary Fee separately for each Low-Income Resident. Ancillary Fees have ranged from $0 to thousands of dollars per month.

78. At all times relevant to this Complaint, the Ancillary Fee was calculated in a manner that was disconnected from the value of any services provided.

79. Since at least January 2023, HallKeen has calculated the Ancillary Fee based on the Plaintiffs' income rather than on services provided.

80. Since at least January 2023, HallKeen has calculated the Ancillary Fee by subtracting from the Low-Income Resident's total household income the rent and $100 for what HallKeen calls an "allowance."

81. Any of the Low-Income Resident's income remaining after the rent and $100 allowance constitutes that month's Ancillary Fee.

82. As a resident's household income or rent obligation varies, the Ancillary Fee varies.

83. The Ancillary Fee leaves each Low-Income Resident with at most $100 to meet all personal needs.

84. In addition to the Ancillary Fee, many Low-Income Residents pay HallKeen a $48 monthly cable charge.

85. Residents report this cable charge is sometimes difficult or impossible to opt out of, leaving them with only $52 per month.

86. For some households, HallKeen provides only one $100 per month allowance to two people, for example, spouses who reside together in a one-bedroom unit—leaving them with $50 each, or $26 each after cable charges.

87. Each month, the Low-Income Residents receive a bill that includes the monthly rent charge, the Ancillary Fee, and any other charges incurred.

88. HallKeen has not properly disclosed or itemized the Ancillary Fee or clearly identified what goods or services the Ancillary Fee covers.

89. At one point, HallKeen sent a written notice to some or all residents stating that the Ancillary Fee would be increased "due to higher cost of operations in food, staff wages, utilities, supplies, and outside vendors."

90. However, costs for "operations in food, staff wages, utilities, supplies, and outside vendors" are already covered by the Low-Income Residents' rent or by PACE.

91. Accordingly, in addition to violating the LIHTC and PACE contracts and regulations, the Ancillary Fee is exacted in return for no actual, additional goods or services provided to the Low-Income Residents.  It is simply an illegal enhancement to HallKeen's revenue from Prospect House.

92. HallKeen has, separate and apart from the Ancillary Fee, an *a la carte* service schedule

listing specific dollar amounts that it charges residents on a fee-for-service basis.  For example, "personal housekeeping" is charged at $600 per month.

93. HallKeen has not clearly disclosed or explained the relationship that exists, if any, between its *a la carte* service schedule and the Ancillary Fee, but the *a la carte* service schedule covers almost any optional services that could potentially be covered by the Ancillary Fee.

94. The Ancillary Fee leaves the Low-Income Residents destitute, with at most $100 per month for personal necessities including, without limitation, telephone bills, toiletries and personal care products, clothing, shoes and slippers, postage, and many other personal items.

95. By depriving the Low-Income Residents of nearly all their income, HallKeen has hindered them from accessing community life outside of Prospect House.

96. It has also deprived the Low-Income Residents of many basic comforts, including books and travel to visit loved ones.

97. HallKeen enforces payment of the Ancillary Fee.

98. HallKeen's enforcement efforts have included sending intimidating "past due" letters when residents fall behind on the Ancillary Fee payments, threatening residents with eviction, and filing unlawful eviction actions, in some cases, to attempt to collect past due Ancillary Fees.

99. These collection efforts further make clear that payment of the Ancillary Fee is mandatory—and that without paying it, the Low-Income Residents risk displacement.

### III.    Factual Allegations: Individual Plaintiffs

#### a.  Michael Cassamas

100. Michael Cassamas has lived in a LIHTC Restricted Unit at Prospect House since July
     2018.

101. Mr. Cassamas is 73 years old.

102. Mr. Cassamas is an individual with disabilities.

103. Mr. Cassamas has limited mobility due to his cardiovascular health conditions and uses
     a wheelchair to travel any distance more than a few feet.

104. Mr. Cassamas has been a PACE participant since he moved to Prospect House.

105. Since at least November 2018, HallKeen has charged Mr. Cassamas an Ancillary Fee in
     addition to his rent.

106. From November 2018 to December 2022, the Ancillary Fee imposed on Mr. Cassamas
     ranged from $500 to $695.

107. In January 2023, the Ancillary Fee imposed on Mr. Cassamas increased to $747 per
     month.

108. At the time, he received no explanation of the increase.  Eleven months later, Mr.
     Cassamas received a notice from HallKeen informing him: "Residents under the Low
     Income Tax Credit Housing at the assisted living [residence] have a $100/month
     allowance from income."

109. The notice further stated that HallKeen would allocate a 3.2% rate increase to Mr.
     Cassamas's Social Security benefits for the upcoming year to a corresponding increase in
     his Ancillary Fee.

110. Mr. Cassamas would keep nothing of his Social Security benefits increase, intended to
     reflect a cost-of-living adjustment.

111. If paid in full, Mr. Cassamas's current charges, including rent, Ancillary Fee, and the

cable fee, leave him with $52 per month for all other expenses.

### b. Michael Forbes

112. Michael Forbes and his wife, Victoria, have lived in a LIHTC Restricted Unit at Prospect House since 2021.

113. Michael Forbes is 72 years old.

114. Both Mr. and Mrs. Forbes have disabilities.

115. Mr. Forbes's health conditions include chronic heart and lung conditions as well as gastrointestinal conditions, kidney disease, and chronic pain that affects his daily activities.

116. Mrs. Forbes suffers from significant heart and lung disease, including chronic respiratory failure and chronic obstructive pulmonary disease, which require her to use an oxygen tank. She has experienced multiple recent hospitalizations due to recurrent internal infections.

117. Mr. and Mrs. Forbes have been PACE participants since they moved to Prospect House.

118. Since they moved to Prospect House, HallKeen has charged Mr. and Mrs. Forbes an Ancillary Fee in addition to their rent.

119. The Ancillary Fee charged to Mr. and Mrs. Forbes has varied in amount and is currently $1,129 per month.

120. The current Ancillary Fee being charged to Mr. and Ms. Forbes leaves them approximately $100 each per month for all other expenses.

### d. John MacMaster

121. John MacMaster has lived in a LIHTC Restricted Unit at Prospect House since the end of February 2021.

122. Mr. MacMaster's wife Kathleen lived with him at Prospect House until she needed a higher level of care and relocated to a nursing facility.

123. Mr. McMaster is 75 years old.

124. Mr. McMaster is an individual with disabilities.

125. Mr. MacMaster has multiple physical and mental health conditions, including limited mobility due to a lower limb amputation.  He uses a wheelchair to ambulate.

126. Mr. MacMaster has been a PACE participant since he moved to Prospect House.

127. HallKeen has charged Mr. MacMaster an Ancillary Fee since he moved to Prospect House.

128. The Ancillary Fee imposed on Mr. MacMaster has varied in amount, ranging from $15 to $705. His current Ancillary Fee is $414.

129. He is also charged a monthly cable fee of $48 per month.

130. After paying the Ancillary Fee and the cable fee, Mr. MacMaster is left with $52 per month for all other expenses, including, without limitation, fee for service travel to visit his wife.

## <u>CLASS ALLEGATIONS</u>

131. Plaintiffs Michael Cassamas, Michael Forbes, and John MacMaster bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class:

> All current or past residents of Prospect House's LIHTC Restricted Units who are or have been charged the Ancillary Fee while enrolled in PACE.

132. Plaintiffs Michael Cassamas, Michael Forbes, and John MacMaster are members of the Class they seek to represent.

133. The members of the Class are sufficiently numerous that joinder of all members is

impracticable. There are well over 100 current and former residents of Prospect House's LIHTC Restricted Units who are or were PACE participants and have been charged the Ancillary Fee.

134. There are questions of law or fact common to the Class. Such questions include, without limitation:

    a.  How HallKeen calculated and accounted for the Ancillary Fee it imposed on members of the Class;

    b.  Whether the Ancillary Fee that HallKeen imposes on its Low-Income Residents is consistent with the regulations governing the LIHTC Agreement and/or the PACE program as well as IRS rules, rulings, policies, procedures, and/or official statements governing the LIHTC program;

    c.  Whether HallKeen's imposition of the Ancillary Fee on residents of Prospect House, but not on the residents of its LIHTC-funded buildings that are not ALRS, violates the federal Fair Housing Act;

    d.  Whether HallKeen's imposition of the Ancillary Fee violates Mass. Gen. Laws c. 151B;

    e.  Whether HallKeen has failed to itemize the charges associated with the Ancillary Fee, as is required under 651 C.M.R. § 12.08;

    f.  Whether HallKeen's imposition of the Ancillary Fee is unfair and/or deceptive within the meaning of G.L. c. 93A, § 2;

    g.  Whether the information that HallKeen provides to Class Members about the Ancillary Fee is unfair and/or deceptive within the meaning of G.L. c. 93A, § 2;

    h.  Whether equitable remedies, injunctive relief, and compensatory damages for the

Class are warranted.

135. The legal violations alleged by the Plaintiffs and the resultant harms are typical of those affecting each member of the Class.

136. The Plaintiffs will fairly and adequately represent and protect the interests of the Class. The Plaintiffs will vigorously represent the interests of the unnamed Class Members, and all members of the Class will benefit by these efforts.

137. Plaintiffs' counsel are competent and experienced in class actions, disability and consumer law, and complex litigation. Plaintiffs' counsel have committed sufficient resources to litigate this case fully through trial and any appeals.

138. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(2) because HallKeen has acted and/or refused to act on grounds generally applicable to the Class as a whole. The Class Members are entitled to injunctive relief and declaratory relief due to the HallKeen's common, uniform application of the unlawful and discriminatory Ancillary Fee. The Plaintiffs and the Class will seek a declaration that HallKeen has violated the LIHTC Agreement and the rules and regulations incorporated therein; the Fair Housing Act, as amended, 42 U.S.C. § 3601 et seq.; Mass. Gen. Laws c. 151B; and Mass. Gen. Laws c. 93A § 2. The Plaintiffs and the Class will also seek an injunction prohibiting HallKeen from imposing and seeking to collect the Ancillary Fee in the future.

139. Class certification is also appropriate under Federal Rule of Civil Procedure 23(b)(3). The common questions of fact and law identified above predominate over any questions affecting only individual members of the Class because all Class Members were or are Low-Income Residents and PACE participants who were subjected to HallKeen's

common, uniform, unfair, and discriminatory Ancillary Fee scheme.

140. Additionally, a class action is superior to other available methods for the fair and efficient adjudication of this case. Regardless of any differences among Class Members, all Class Members suffered the same injury in that they endured an exploitative and illegal Ancillary Fee that impoverished them and discriminated against them as elders and people with disabilities. The Class Members have been damaged and are entitled to recovery as a result of HallKeen's common, uniform, unfair, and discriminatory policies and practices.

## CAUSES OF ACTION

### COUNT ONE
### Breach of Contract
### On Behalf of All Plaintiffs and the Class

141. Plaintiffs repeat and reallege the allegations in ¶ 1 to ¶ 140 as if fully set forth herein.

142. As asserted in paragraphs 31-46 above, Prospect House is governed by a "LIHTC Agreement" that the Plaintiffs and other Low-Income Residents have a right to enforce. Prospect House is also subject to the rules governing LIHTC-financed buildings (which are incorporated into the LIHTC Agreement).

143. HallKeen has imposed the Ancillary Fee on its Low-Income Residents in violation of the LIHTC Agreements and the rules governing additional fees incorporated therein.

144. HallKeen's breach of the LIHTC Agreement has damaged the Plaintiffs and members of the Class because HallKeen has charged them the Ancillary Fee in violation of the LIHTC Agreement and incorporated rules.

### COUNT TWO
### Fair Housing Act, 42 U.S.C. § 3604 *et seq.*
### Disparate Treatment and Disparate Impact
### On Behalf of All Plaintiffs and the Class

145. The Plaintiffs repeat and reallege the allegations in ¶ 1 to ¶ 144 as if fully set forth herein.

146. The Fair Housing Act ("FHA") prohibits discrimination in the provision of rental housing based on handicap. 42 U.S.C. § 3604(f).

147. The FHA also prohibits the imposition of different terms and conditions of rental housing because of a handicap. *Id.*

148. The FHA defines "handicap" as "(1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment." 42 U.S.C. § 3602.

149. ALRs are entities that provide both housing and assistance with activities of daily living, including, "at a minimum, assistance with bathing, dressing and ambulation." Mass. Gen. Laws c. 19D § 10. *See* Mass. Gen. Laws c. 19D, § 1.

150. All ALR residents have disabilities (or "handicaps") within the meaning of the FHA because they require assistance with major life activities like bathing, dressing, and ambulation.

151. Further, in order to be enrolled in PACE, participants must "be certified by the MassHealth agency or its agent to be in need of nursing facility services." 130 C.M.R. 519.007.

152. On information and belief, most residents in Prospect House are PACE participants.

153. HallKeen imposes the Ancillary Fee on low-income residents of Prospect House, a LIHTC-funded ALR with a significant population of PACE participants, but not on residents of its LIHTC-funded buildings that are not ALRs.

154. The imposition of the Ancillary Fee on low-income residents of Prospect House, but not

on low-income residents of other LIHTC-funded developments, is a HallKeen policy.

155. By imposing the Ancillary Fee on residents of Prospect House but not on residents of

LIHTC-funded developments that are not ALRs, HallKeen engages in disparate treatment

of people with disabilities. The Ancillary Fee damages these residents by burdening them

with illegal, excessive, and improper fees, in comparison to nondisabled individuals who

live in other HallKeen developments.

156. Alternatively, HallKeen's Ancillary Fee policy has a disproportionate adverse impact on

disabled residents.

157. Because HallKeen's policy is to charge the Ancillary Fee to residents of Prospect House

and not LIHTC-funded developments that are not ALRs, the policy leads to

disproportionately more expensive housing costs for those with disabilities than for those

without them.

158. HallKeen's policies and practices, as described above, constitute unlawful

discrimination in violation of the Fair Housing Act, 42 U.S.C. § 3604, by:

    a.  providing different terms and conditions of rental because of a disability in

       violation of 42 U.S.C. § 3604(f); and

    b.  discriminating in the provision of services in connection with housing because of

       a disability in violation of 42 U.S.C. § 3604(f).

**COUNT THREE**
**Massachusetts Anti-Discrimination Law,**
**Massachusetts General Laws, c. 151B § 4(6)**
**Disability and Age Discrimination**
**On Behalf of All Plaintiffs and the Class**

159. The Plaintiffs repeat and reallege the allegations in ¶ 1 to ¶ 158 as if fully set forth

herein.

160. Massachusetts General Laws c. 151B § 4(6) prohibits discrimination "in the terms, conditions or privileges of [housing] accommodations" because of disability ("handicap") or age.

161. Massachusetts General Laws c. 151B defines "handicap" as "(a) a physical or mental impairment which substantially limits one or more major life activities of a person; (b) a record of having such impairment; or (c) being regarded as having such impairment[.]" Mass. Gen. Laws c. 151B § 1.

162. ALRs are entities that provide both housing and assistance with activities of daily living, including, "at a minimum, assistance with bathing, dressing and ambulation." Mass. Gen. Laws c. 19D § 10. *See* Mass. Gen. Laws c. 19D, § 1.

163. All ALR residents have disabilities (or "handicaps") within the meaning of Mass. Gen. Laws c. 151B because they require assistance with major life activities like bathing, dressing, and ambulation.

164. Further, in order to be enrolled in PACE, participants must "be certified by the MassHealth agency or its agent to be in need of nursing facility services." 130 C.M.R. 519.007.

165. PACE further requires that all participants be "55 years of age or older." 130 C.M.R. 519.007.

166. Therefore, all PACE participants are elders.

167. On information and belief, most residents in Prospect House are PACE participants.

168. HallKeen imposes the Ancillary Fee on low-income residents of Prospect House, a LIHTC-funded ALR with a significant population of PACE participants, but not on

residents of its LIHTC-funded buildings that are not ALRs.

169. The imposition of the Ancillary Fee on low-income residents of Prospect House, but not on low-income residents of other LIHTC-funded developments, is a HallKeen policy.

170. By imposing the Ancillary Fee on residents of Prospect House but not on residents of LIHTC-funded developments that are not ALRs, HallKeen engages in disparate treatment of people with disabilities. The Ancillary Fee damages these residents by burdening them with illegal, excessive, and improper fees, in comparison to nondisabled individuals who live in other HallKeen developments.

171. Alternatively, HallKeen's Ancillary Fee policy has a disproportionate adverse impact on disabled residents.

172. Because HallKeen's policy is to charge the Ancillary Fee to residents of Prospect House and not LIHTC-funded developments that are not ALRs, the policy leads to disproportionately more expensive housing costs for those with disabilities than for those without them.

173. Further, because most or all of Prospect House residents are elders, and all PACE participants are 55 years of age or older, the imposition of the Ancillary Fee discriminates based on age.

**COUNT FOUR**
**Massachusetts Consumer Protection Law,**
**Massachusetts General Laws, c. 93A § 9**
**Unfair and Deceptive Conduct**
**On Behalf of All Plaintiffs and the Class**

174. The Plaintiffs repeat and reallege the allegations in ¶ 1 to ¶ 173 as if fully set forth herein.

175. HallKeen and each Defendant is engaged in "trade or commerce" in Massachusetts

within the scope of Mass. Gen. Laws c. 93A, § 1, through the provision of rental housing and assisted living services in Revere, Massachusetts.

176. Through the acts and omissions described above, HallKeen has engaged in the following "unfair or deceptive acts or practices" in violation of Mass. Gen. Laws c. 93A §§ 2 and 9.

177. Each practice described below violates Mass. Gen. Laws c. 93A §§ 2 and 9 and causes damage to the Plaintiffs and the Class in the form of lost economic resources.

A. *Violations of the LIHTC Agreement and Program Rules*

178. As described above, HallKeen obtained significant tax credits in exchange for making 77 of Prospect House's units affordable pursuant to federal standards.

179. HallKeen's Ancillary Fee violates the LIHTC Agreement and the applicable laws, regulations, and policies governing LIHTC-financed developments by transforming affordable housing into grossly unaffordable housing.

180. HallKeen's violation of the LIHTC Agreement is fundamentally unfair and deceptive.

181. Further, HallKeen's imposition of the Ancillary Fee in violation of federal regulations is "oppressive" and "otherwise unconscionable." 940 C.M.R. § 3.16(1).

B. *Violations of Anti-Discrimination Law*

182. HallKeen discriminates against its elderly and disabled residents by imposing the Ancillary Fee on its residents of Prospect House, but not on the residents of its other LIHTC-funded buildings that are not ALRs.

183. HallKeen's discriminatory conduct is unfair or deceptive in violation of Mass. Gen. Laws c. 93A § 9 because it is "oppressive" and "otherwise unconscionable." 940 C.M.R. § 3.16(1).

184. HallKeen's discriminatory conduct is also unfair or deceptive in violation of Mass. Gen. Laws c. 93A § 9 because it fails to comply with Mass. Gen. Laws c. 151B, a statute "meant for the protection of the public's health, safety, or welfare." 940 C.M.R. § 3.16(3).

C.  *Failure to Itemize*

185. HallKeen has also engaged in unfair and deceptive acts by failing to explain or itemize the Ancillary Fee and what goods and/or services it purportedly covers.

186. This practice violates the state regulations governing ALRs, which provide residents a right to an itemized bill for fees, charges, and other expenses and require residency agreements to include a "clear explanation" of fees for services as well as itemization of any bundled services. 651 C.M.R. § 12.08.

187. These violations, in turn, are "unfair and deceptive" within the meaning of Mass. Gen. Laws c. 93A § 2, as the ALR regulations were "meant for the protection of the public's health, safety, or welfare." 940 C.M.R. § 3.16(3).

D.  *Charging for Services Paid in Full by MassHealth*

188. HallKeen's imposition of the Ancillary Fee for services, if any, that are covered fully by PACE is an unfair and deceptive practice.

189. As described above, HallKeen receives almost $3,000 per month in MassHealth funds per PACE participant to provide assisted-living services to PACE participants who reside at Prospect House.

190. HallKeen's policies and procedures must comply with all federal and state regulations governing federally funded healthcare providers.

191. This includes the MassHealth provider regulations at 130 C.M.R. 450.00 *et seq*.

192. The MassHealth regulations require, as a condition of receipt of funds, that providers must accept MassHealth payments as "payment in full" for services rendered. 130 C.M.R. 450.203.

193. Federal regulations extend this rule to PACE's subcontractors, including HallKeen, who are required under their contracts with PACE to "[a]ccept payment from the PACE organization as payment in full, and not [to] bill participants." 42 C.F.R. § 460.70(d)(5)(ii).

194. HallKeen's violations of these funding restrictions are "unfair and deceptive" within the meaning of Mass. Gen. Laws c. 93A § 2, as the state regulations governing the MassHealth program were "meant for the protection of the public's health, safety, or welfare." 940 C.M.R. § 3.16(3).

195. Further, HallKeen's efforts to "double charge" its residents for services already paid for by PACE are "oppressive" and "otherwise unconscionable." 940 C.M.R.  § 3.16(1).

E.  *Fundamentally Unfair and Deceptive Charges*

196. HallKeen's imposition of the Ancillary Fee, which does not provide residents with anything of value beyond the goods and services already covered by their rent and payments from EBNHC PACE, is fundamentally unfair and deceptive.

197. Since at least January 2023, the Ancillary Fee has extracted all of Prospect House's Low-Income Residents' income, save for an "allowance" ranging from approximately $50 to $100.

198. By calculating the fee based on each Low-Income Resident's income, some residents pay an Ancillary Fee that is much higher than that of other residents, despite receiving the same services (or none at all). Similarly, by failing to itemize or explain the Ancillary

Fee, some residents are deceived into paying much more than their neighbors.

199. Even prior to calculating the fee based on income, HallKeen calculated the Ancillary Fee differently for each resident, such that it did not correlate to the value of any services provided and improperly charged residents different amounts despite receiving the same services (or none at all).

200. Further, HallKeen exploits the vulnerability of its elderly and disabled residents by imposing the charge on a group of people dependent on HallKeen for the essential activities of daily living and unlikely to have housing alternatives given their low incomes and need for assisted living services.

201. HallKeen additionally has deceived its Low-Income Residents by sending a notice purporting to explain the calculation formula for the Ancillary Fee—without disclosing that charging such a fee is contrary to law.

202. "A practice is unfair if it is within the penumbra of some common-law, statutory or other established concept of unfairness; is immoral, unethical, oppressive, or unscrupulous; and causes substantial injury to [consumers]." (internal marks omitted) *Linkage Corporation v. Trustees of Boston University*, 425 Mass. 1, 27 (1997).

203. HallKeen's imposition of the mandatory Ancillary Fee is "oppressive" and "otherwise unconscionable." 940 C.M.R. § 3.16(1).

## **PRAYER FOR RELIEF**

Wherefore, the Plaintiffs respectfully request on their own behalf and on behalf of the Class:

1. Certification of this case as a class action pursuant to Fed. R. Civ. P. 23 and designation of Michael Cassamas, Michael Forbes, and John MacMaster as representatives of the Class

together with designation of their counsel as counsel to the Class;

2. A declaratory judgment that the practices and policies complained of herein are unlawful and violate the LIHTC Agreement and the rules and regulations incorporated therein; the Fair Housing Act, as amended, 42 U.S.C. § 3601 et seq.; Mass. Gen. Laws c. 151B § 4; and Mass. Gen. Laws c. 93A § 9;

3. A preliminary and permanent injunction against the Defendants and their partners, officers, agents, representatives, employees, and successors, and all other persons acting in active concert with them from:

    a. Imposing or collecting an Ancillary Fee;

    b. Imposing or collecting interest on Ancillary Fees;

    c. Including an Ancillary Fee, or any other additional charge with the same substance by any other name, in any contracts with HallKeen's low-income ALR residents, current or future;

    d. Pursuing any prefiling eviction activities or eviction activities against HallKeen's low-income ALR residents based on unpaid Ancillary Fees (or any other additional charge with the same substance by any other name) and/or based on interest thereon;

    e. Pursuing any collection activities or civil collection actions against Prospect House's Low-Income Residents in relation to the Ancillary Fee and/or interest based on those charges.

4. All damages sustained as a result of the Defendants' conduct;

5. Actual and exemplary (treble) damages for violations of Mass. Gen. Laws. c. 93A, §§ 2 and 9;

6. Exemplary and punitive damages for violations of the Fair Housing Act, in an amount commensurate with Defendants' ability to pay and to deter future misconduct;

7. Reasonable attorneys' fees, litigation expenses, and costs;

8. Pre-judgment and post-judgment interest, as provided by law; and

9. Such other legal and equitable relief as this Court deems necessary, just, and proper.

## **JURY DEMAND**

Pursuant to Rule 39 of the Federal Rules of Civil Procedure or any other similar rule or law, the Plaintiffs demand a trial by jury for all causes of action and issues for which trial by jury is available.

Respectfully submitted,

Counsel for Plaintiffs

/s/ Sean Ahern

Sean Ahern, BBO #698446
Ilana B. Gelfman, BBO #675250
Carly Margolis, BBO #711389
GREATER BOSTON LEGAL SERVICES
197 Friend Street
Boston, MA 02114
617-371-1234
SAhern@gbls.org
IGelfman@gbls.org
CMargolis@gbls.org


/s/ Andrew J. Gallo

Andrew J. Gallo, BBO #645739
Michael K. Gocksch, BBO #712575
MORGAN LEWIS & BOCKIUS, LLP
1 Federal Street

Boston, MA 02110
617-951-8117
andrew.gallo@morganlewis.com
michael.gocksch@morganlewis.com